IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**LOUIS FROUD,** *et al.*                                            **PLAINTIFF**

**V.**                                  **4:09CV00936-WRW**

**ANADARKO E&P COMPANY
LIMITED PARTNERSHIP,** *et al.*                          **DEFENDANTS**

**ORDER**

Pending is Plaintiffs' Motion to Remand (Doc. No. 15).  Defendants have responded[1] and

Plaintiffs have replied.[2]

**I.      BACKGROUND**

On January 8, 2009, Plaintiffs Louis Froud and Shannon Froud filed a Complaint against

Defendants in the Circuit Court of White County, Arkansas.[3]  Plaintiffs amended the complaint

on November 17, 2009, naming additional Plaintiffs, Defendants, and asserting class action

claims.[4]  In essence, this is a quiet title case between Plaintiffs and Anadarko.[5]

As Plaintiffs recognize,[6] this case is nearly identical to *Griffis, et al v. Anadarko E&P*

*Company, L.P, et al.,*[7] a quiet title action that was dismissed on August 24, 2009, after I found

---

[1]Doc. No. 26.

[2]Doc. No. 27.

[3]Doc. No. 1.

[4]Doc. No. 6.

[5]More specifically, Anadarko E&P Company Limited Partnership, Anadarko Land
Corporation, Upland Industries Corporation, and Upland Industrial Development Company.

[6]Doc. No. 16.

[7]No. 4:08-CV-01974-WRW (E.D. Ark. filed Sept. 5, 2008).  Notably, one of Plaintiffs'
counsel is the same in this and *Griffis.*

that "under the *Strohacker* Doctrine, the reservation of minerals in the deed at issue included oil and natural gas."[8]

Again, Plaintiffs' primary argument is that when Missouri Pacific Railroad conveyed land in the 1930's with a "reservation of minerals," the reservation "did not have the effect of reserving to Missouri Pacific the oil and gas rights" in the disputed land.  Accordingly, Plaintiffs contend that they, as landowners, own the oil and gas under on their properties.

Anadarko asserts that it properly obtained the oil and gas rights when Missouri Pacific deeded those rights to Anadarko in 1995 -- because Missouri Pacific owned the oil and gas rights through the "reservation of minerals" from the 1930's deeds.  The Arkansas Oil and Gas Commission has designated SEECO, XTO Energy, and Chesapeake Exploration LLC ("producer Defendants") as producers of hydrocarbons (oil and gas) of the tracts of land in dispute.  The producer Defendants are producing hydrocarbons on the disputed properties, and having determined that Anadarko is the owner of the mineral rights, are paying Anadarko (not Plaintiffs) for the hydrocarbons being produced.

Plaintiffs seek certification of a "class consisting of those person whose predecessors in title purchased the tracts of land [in dispute] and who currently own the oil and gas rights in those tracts of land under Plaintiff's interpretation of the Reservation."[9]  Plaintiffs want the Court to declare that Missouri Pacific's reservation of rights did not include oil and gas, and that Plaintiffs, not Anadarko, are the owners of the mineral rights.  Additionally, Plaintiffs request that the Court "impose a constructive trust with respect to all money and other things of value paid" by the producer Defendants to Anadarko for the production of oil and gas extracted from

---

[8]*Griffis*, No. 4:08-CV-01974-WRW, Doc. No. 47.

[9]Doc. No. 6.

the disputed land.  Plaintiffs also seek from the producer Defendants "their respective shares of

the value of the oil and gas and other things of value attributable [to the disputed land] but not

yet paid to anyone."[10]

Plaintiffs want the Court to declare the Missouri Pacific's reservation of mineral rights

invalid, determine that Plaintiffs own the mineral rights in the land, and have Defendants pay

Plaintiffs for the oil and gas that has been extracted.

## II.   DISCUSSION

There appears to be no dispute that Defendant established jurisdiction under the Class

Action Fairness Act ("CAFA").  However, Plaintiffs seek remand under CAFA's "local-

controversy" exception.

The "local-controversy" exception prohibits federal jurisdiction when (1) more than two-

thirds of the proposed class are citizens of the state where the case was originally filed; (2) the

principal injuries occurred in the state where the case was filed; (3) no other class actions have

been filed within the previous three years making similar allegations against any of the

defendants; and (4) at least one of the defendants from whom "significant relief" is sought, and

whose conduct "forms a significant basis for the claims," is a citizen of the state where the case

was originally filed.[11]  Contrary to Defendants' assertion about a "legal certainty" being the

---

[10]Doc. No. 6.

[11]28 U.S.C. § 1332(d)(4).

burden of proof,[12] Plaintiffs must establish each of these elements by a preponderance of the evidence.[13]

Defendants dispute only two of the "local-controversy" exception elements. Accordingly, the issues to be decided in this case are whether more than two-thirds of the proposed class are citizens of Arkansas and whether SEECO, the only non-diverse defendant, is a "significant" defendant.

### A.    Two-thirds Citizenship in Arkansas

To establish two-thirds of the proposed class members (*e.g.*, those claiming to have an ownership interest in mineral rights of the affected tracts of land) are Arkansas citizens, Plaintiffs hired Anthony Davis, the President of Brown Davis, a "company engaged in the compilation, organization, and analysis of geographical information system databases."[14] According to Davis's affidavit, he determined that there are "478 unduplicated persons (including individuals, corporations, limited liability companies, partnerships, trusts, and other unidentified entities) who currently own land included within the areas of interest."[15]  Davis found that 361 -- 75.52% -- of those owners are Arkansas citizens.

---

[12]Defendants' argument is misplaced because it relies on case law finding that the "amount in controversy" must be established "to a legal certainty."  This is different from the "local-controversy exception."

[13]*In re Sprint Nextel Corp.*, 539 F.3d 669, 673 (7th Cir. 2010); *Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc.*, 485 F.3d 804, 813-14 (5th Cir. 2007); *Magee v. Advance America Servicing of Arkansas, Inc.*, No. 6:08-CV-6105, 2009 WL 890991 (W.D. Ark. Apr. 1, 2009); *Rasberry v. Capitol County Mut. Fire Ins. Co.*, 609 F. Supp. 2d 594, 603 (E.D. Tex. 2009); *Powell v. Tosh*, No. 5:09-CV-000121-TBR, 2009 WL 3484064 (W.D. Ky. Oct. 22, 2009); *Anthony v. Small Tube Mfg. Corp.*, 535 F. Supp. 2d 506, 514 (E.D. Pa. 2007).

[14]Doc. No. 15-2.

[15]*Id.*

Defendants critique Davis's analysis by pointing out that his affidavit "*is limited to the residency of the **surface owners**, not the residence of those persons or entities who would own the minerals*" if not for Missouri Pacific's disputed mineral reservations in the land.[16] Defendants argue that mineral rights owners are the relevant class as defined in Plaintiff's complaint, not land owners.

However, Plaintiffs point out that their counsel examined "the chain of title for each tract of land to determine whether mineral reservations had been made subsequent to the initial reservations made by Missouri Pacific" and that any subsequent reservations were considered by Davis.  In other words, Davis did consider mineral owners when coming up with his calculation of Arkansas citizens.  Accordingly, it seems to me that Plaintiff has established by a preponderance that at least two-thirds of the proposed class is made up of Arkansas citizens.

## B.    Significant Defendant

Defendant SEECO is the only Arkansas corporation.  Accordingly, under the "local-controversy" exception, Plaintiffs have the burden of establishing that SEECO is a defendant from whom "significant relief is sought" and "whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class . . . ."[17]

The Court of Appeals for the Third Circuit has determined that the "significant basis provision . . . requires the [local defendant's] alleged conduct to form a *significant basis* of all the claims asserted."[18]  "The significance of the local defendant's alleged conduct must always be assessed in comparison to the alleged conduct of all the Defendants."[19]

---

[16]Doc. No. 26 (emphasis in original).

[17]28 U.S.C. § 1332(d)(4)(A)(i)(II).

[18]*Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 155 (3d Cir. 2009) (emphasis in original).

[19]*Id.* at 157.

The parties focus their briefs on how many Plaintiffs may have claims against each producer Defendant; the number of acres each producer Defendant is leasing; and how much gas has been produced or could be produced[20] from the land leased by the producer Defendants. Notably, Plaintiffs compare SEECO only to the other producer Defendants and overlook the significance of Anadarko.

This case rests entirely on Anadarko's conduct -- that is, Anadarko's claim that it owns the mineral rights in the disputed lands. For example, if I were to determine that Missouri Pacific's reservation of mineral rights was valid and properly conveyed to Anadarko, then Plaintiffs claims against the producer Defendants would be dismissed. If I were to determine that Plaintiffs' owned the mineral rights in the land, Plaintiff's "significant relief" would be from Anadarko since Plaintiffs want a constructive trust including "all money and other things of value paid" by the producer Defendants to Anadarko for the production of oil and gas extracted from the disputed land.

Plaintiffs attempt to finesse this issue by claiming that they do not seek money damages against Anadarko. However, the Amended Complaint plainly states that Plaintiffs seek a "constructive trust" and that "Anadarko be ordered to deliver [compensation from money paid by the producer Defendants] in the trust . . . ." Since Plaintiffs are requesting that Anadarko relinquish any royalties it received based on mineral extraction from the land, Plaintiffs are, in fact, seeking money from Anadarko.

The fact that SEECO has produced oil and gas from the disputed land, and is paying proceeds to Anadarko does not appear to me to amount to a "significant basis" for the claims

---

[20]I'm not sure of the relevance of gas that could be produced, since Plaintiffs seek a constructive trust for royalties paid. Additionally, if the quiet title issue were decided in Plaintiffs' favor, I would think that, at that point, Plaintiffs would have the authority to either stop production or negotiate their own leases with the producer Defendants -- so royalties on gas that "could be produced" would go directly to Plaintiffs.

asserted by the class.  Again, the legal issue (quiet title) and requested relief (that Anadarko hand

over the money it has received so far) are against Anadarko.

Plaintiffs also seek from the producer Defendants "their respective shares of the value of

the oil and gas and other things of value attributable [to the disputed land] but not yet paid to

anyone."[21]  The exact meaning of this language is unclear.  However, the most logical conclusion

is that Plaintiffs seek to be paid when the producer Defendants already have extracted the

minerals, but have not yet issued royalty checks to Anadarko.  This is not "significant relief"

from SEECO; rather, it simply is redistribution of oil and gas proceeds based on the quiet title

determination.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Plaintiffs' Motion to Remand

(Doc. No. 15) is DENIED.

As I mentioned earlier, this case, like *Griffis*, is a quiet title action based entirely upon

whether the common usage and meaning of the term "minerals" in White County, Arkansas in

the 1930's included oil and gas.  In *Griffis*, I determined that the term "minerals" included oil

and gas, and now that issue is before the Court of Appeals for the Eighth Circuit (I believe the

parties presented oral arguments just last week).  Accordingly, it seems to me that this case

should be stayed pending a ruling by the Eighth Circuit in *Griffis*.  The parties should submit

simultaneous briefs regarding whether the case should be stayed, by 5 p.m., Monday, March 22,

2010

IT IS SO ORDERED this 16th day of March, 2010.

/s/ Wm. R. Wilson, Jr._____
UNITED STATES DISTRICT JUDGE

---

[21]Doc. No. 6.